**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | | |
|---|---|---|
| **CYNTHIA B. MCCRORY** ) | | Chapter 11 |
| ) | | |
| ) | | Case No. 09-32341 |
| **Debtor.** ) | | |
| _____) | | |

**DEBTOR'S MOTION FOR AN ORDER AUTHORIZING**
**THE SALE OF MINORITY MEMBERSHIP INTEREST IN**
**COLONY DEVELOPMENT PARTNERS, LLC**

Cynthia B. McCrory ("***Debtor***"), hereby moves this Court (the "***Motion***") for entry of an order pursuant to 11 U.S.C. §§ 105 and 363, and Bankruptcy Rule 6004, authorizing the sale of the Debtor's minority membership interest in Colony Development Partners, LLC (***Colony***") to Colony in accordance with the terms of Colony's Operating Agreement.  In support of this Motion, the Debtor alleges:

**Parties and Jurisdiction**

1.    On August 31, 2009 (the "***Petition Date***"), the Debtor filed a voluntary Chapter 11 petition.  The Debtor continues to conduct her affairs as a debtor-in-possession pursuant to 11 U.S.C. § 1107 and the Chapter 11 Operating Order entered by this Court on September 3, 2009 (Docket No. 9).

2.    Colony is a North Carolina limited liability company with its principal place of business in Charlotte, North Carolina.  Colony is a closely held real estate development company which is engaged in the business of managing and developing commercial real estate projects.

3.    This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334.  Venue of this proceeding and the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (O).

PPAB 1629423v2

**Background**

4. Colony's Articles of Organization were filed with the North Carolina Secretary of State on June 3, 2008. On or about that date, the Debtor and the other members of Colony executed an Operating Agreement.

5. The Debtor is a Class A member of Colony. The Debtor owns a 21.425% membership interest in Colony with respect to both voting rights and profits (the "***Membership Interest***").

6. The scheduled value of the Membership Interest is $100, as shown on Attachment B-13 to Schedule B.

7. The filing of the Debtor's voluntary petition and failure to dismiss it within 60 days constituted an Involuntary Withdrawal Event under Section 9.2(e) of the Agreement. Under Section 9.3(a) of the Agreement, the occurrence of this Involuntary Withdrawal Event obligates Colony to purchase and redeem the Membership Interest for 85% of its "Fair Market Value" as defined in the Agreement.

8. Section 9.4 of the Agreement provides that "[t]he fair market value (the "Fair Market Value") for the Withdrawing Member's Membership Interest shall be determined by multiplying the Profits Interest associated with the Withdrawing Member's Membership Interest by the agreed value of a one percent (1%) Class A Membership Interest in [Colony]."

9. Like nearly all real estate development companies, Colony is utilizing all of its revenue simply to cover the cost of operations. Furthermore, based on the structure of the membership classes in Colony, all Class B members must receive a return of their equity plus a preferred return before any funds are distributed to Class A members. Consequently, the Debtor and Colony agree that the Class A membership interests in Colony are valueless, and thus the Fair Market Value of the Membership Interest is $0.

10. In accordance with Section 9.3(a) of the Agreement, taking 85% of the Fair Market Value would result in a contractual redemption price of $0.

11. Notwithstanding the foregoing, Colony has agreed to pay the Debtor $5,000 (the "**Redemption Price**") for the Membership Interest. Colony has also agreed to pay the Redemption Price in cash, even though Section 9.5 of the Agreement permits Colony to pay for the Membership Interest with a promissory note payable over one year in four quarterly installments.

12. The Debtor has not received any other offers to purchase the Membership Interest, and believes that he is unlikely to receive any such offers for the following reasons:

   (a) the primary business of Colony, commercial real estate development and management, has been adversely impacted by the recent economic downturn and precipitous decline in the real estate market; and

   (b) the Membership Interest is a minority interest in a closely-held limited liability company, which even in a thriving real estate market would significantly impair the value of the Membership Interest (and thus the Debtor's ability to market it) to anyone other than Colony or the other members of Colony.

## Authority

13. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Additionally, section 105(a) of the Bankruptcy Code allows this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

14. Courts in the Fourth Circuit permit pre-confirmation sales of the debtor's assets so long as there is a "sound business reason" for the sale. *See In re Mattress Discounters Corporation*, 2008 WL 2542989 at *4 (Bankr. D. Md. 2008), *citing Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp),* 722 F.2d 1063, 1070-1071 (2d Cir.1983)

(applying "sound business reason" standard); *see also In re The Lady H Coal Company, Inc.*, 193 B.R. 233 (Bankr. S.D.W.V. 1996) (applying "sound business purpose" standard); *In re WBQ Partnership*, 189 B.R. 97 (Bankr. E.D. Va. 1995) (same). "Section 363(b) of the Code seems on its face to confer upon the bankruptcy judge virtually unfettered discretion to authorize the use, sale or lease, other than in the ordinary course of business, of property of the estate." *In re Lionel Corp.*, 722 F.2d 1063, 1069 (2d Cir. 1983).

15. Bankruptcy Rule 6004(f)(1) provides that sales not in the ordinary course of business may be by private sale.

16. The proposed sale of the Membership Interest to Colony meets the "sound business reason" standard because it will generate cash for the Debtor's estate by liquidating an asset that cannot realistically be sold to any other buyer. The agreed-upon Redemption Price far exceeds the fair market value of the Membership Interest and its scheduled value.

17. The Debtor's sale of the Membership Interest to Colony in accordance with the terms of the Agreement will maximize the value of the Membership Interest to the Debtor's estate, and is therefore in the best interests of creditors.

WHEREFORE, the Debtor respectfully requests that the Court enter an Order:

1. Authorizing the Debtor to sell the Membership Interest to Colony for a cash payment of $5,000;

2. Authorizing the Debtor and Colony to execute all instruments and agreements reasonably necessary to consummate the sale;

3. Holding that the ten-day stay of Bankruptcy Rule 6004(h) not apply; and

4.   Granting such other and further relief as the Court deems just and proper.

This the 16th day of December, 2009.

          /s/ R. Keith Johnson
          R. KEITH JOHNSON
          Attorney for Debtor (8840)
          1275 Hwy. 16 S.
          Stanley, NC 28164
          (704) 827-4200